## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CHRISTINA MITCHELL,

        *Plaintiff,*

v.

                                        Case No. 2:24-cv-02052-EFM-TJJ

ASCENSION VIA CHRISTI HOSPITAL ST
TERESA, INC. a/k/a VIA CHRISTI
HOSPITAL WICHITA ST. TERESA,

        *Defendant.*

## MEMORANDUM AND ORDER

Before the Court is a Motion to Dismiss (Doc. 8) by Defendant Ascension Via Christi Hospital St Teresa, Inc., a/k/a Via Christi Hospital Wichita St. Teresa. In its Motion, Defendant seeks to dismiss Plaintiff Christina Mitchell's discrimination, retaliation, and hostile work environment claims under Title VII and the Americans with Disabilities Act ("ADA"). Because Plaintiff fails to allege any nonconclusory facts showing either race or disability discrimination, the Court grants Defendant's Motion. Accordingly, Plaintiff's claims are dismissed without prejudice.

### I.      Factual and Procedural Background[1]

---

[1] The facts in this section are taken from Plaintiff's Complaint and are considered true for the purposes of this Order.

Plaintiff is an African American female "with a disability or perceived disability of bi-polar disorder." Defendant is a nonprofit provider of medical service amd operates at least one hospital in Wichita, Kansas.

On January 24, 2022, Plaintiff began working for Defendant as a patient care technician. Her supervisor was Denise Dunn. Plaintiff's niece, Aveanna Amador, also worked at the same hospital and lived with Plaintiff's mother. According to Plaintiff, Amador is half-African American and lighter skinned than Plaintiff. Around five months into Plaintiff's employment, Amador informed Defendant's staff that Plaintiff has bipolar disorder.

On February 25, 2023, Plaintiff's mother accused Amador of stealing, which led to an altercation between the two of them. Plaintiff alleges that she was not present during the domestic incident. Shortly after, Amador moved in with Plaintiff's supervisor, Dunn.

Rumors of the incident spread around the hospital. Without any further detail, Plaintiff alleges that these rumors circulated because she is African American and mentally disabled. Plaintiff complained about the rumors to another supervisor and an unidentified person in the hospital's "Associate Relations" department on March 3, 2023.

After Plaintiff's complaints, Dunn began following Plaintiff around the hospital and would ask other nurses if Plaintiff was performing her duties. Dunn also told others that Plaintiff left a shift early and refused to work with Dunn. Plaintiff alleges both statements are untrue.

On March 30, 2023, Plaintiff obtained a protection from stalking order ("PSF Order") from the Sedgwick Count District Court against both Dunn and Amador. On April 30, 2023, Plaintiff also submitted a "formal complaint" to Associate Relations—Defendant's HR equivalent—stating her issues with Dunn and Amador and informing Defendant of the PSF Order. Later that day, an unidentified person asked Plaintiff if she would "drop her charges" against Dunn. Plaintiff refused.

On May 12, 2023, Plaintiff was informed that she would have to transfer to another one of Defendant's hospitals in Wichita.  That same day, she was suspended from her job "based upon a claimed incident where she supposedly physically attacked her niece at her mother's home."  On May 15, 2023, Plaintiff interviewed at another hospital and agreed to be transferred.  However, on May 16, 2023, an unidentified person in management at Defendant called Plaintiff to inform her that she was terminated based on Plaintiff's alleged assault of Amador.  There are no allegations regarding the identity of who made the decision to terminate Plaintiff.

On July 3, 2023, Plaintiff filed her initial discrimination complaint with the Kansas Human Rights Commission.  The complaint was transferred to the Equal Employment Opportunity Commission ("EEOC").  On November 13, 2023, the EEOC issued a "Right to Sue" letter, stating it would not investigate Plaintiff's claim.

Plaintiff filed the present case on February 9, 2024.  In her Complaint, she alleges that Defendant discriminated and retaliated against her because of her race and disability while creating a hostile work environment.  On April 26, 2024, Defendant moved to dismiss Plaintiff's entire case.

On May 14, 2024, Plaintiff filed her first Motion For Extension of Time to Respond to Defendant's Motion to Dismiss, stressing that her counsel's serious medical needs prevented her from responding on time.  The Court granted Plaintiff's Motion.  On May 29, 2024, Plaintiff filed her second motion for an extension for largely the same reasons.  Again, the Court granted the Motion, extending Plaintiff's time to respond to June 10.  On June 8, 2024, Plaintiff filed her third motion to extend the deadline.  This time, the Court reminded Plaintiff of D. Kan. Rule 6.1(a) in which extensions of time are to be filed no less than 3-days prior to the specified time.  The Court

also cautioned Plaintiff's counsel that if she "is unable to focus on this case counsel might look into new counsel for the plaintiff."  Nevertheless, the Court granted Plaintiff's third motion.

Plaintiff submitted her Response thereafter.  Only six pages long, it includes no legal citations except to overturned cases to provide an outdated legal standard for motions to dismiss. Substantively, Plaintiff does not respond to Defendant's Motion.  Instead, she summarily repeats her allegations and concludes without any analysis that the Motion should be denied.  Now that Defendant has filed a Reply, the matter is fully briefed and ripe for ruling.

## II.    Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[2]  Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[3]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[4]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[5]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[6]  Viewing the complaint in this manner, the court must decide whether the

---

[2] Fed. R. Civ. P. 12(b)(6).

[3] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[5] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[6] *Iqbal*, 556 U.S. at 678–79.

plaintiff's allegations give rise to more than speculative possibilities.[7]  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[8]

### III.    Analysis

Plaintiff asserts discrimination, retaliation, and hostile work environment[9] claims under both Title VII and the ADA.  The analysis for claims under Title VII and the ADA is nearly identical.

### A.    Claims under McDonnell Douglas framework

To survive a motion to dismiss, plaintiffs bringing discrimination or retaliation claims under Title VII or ADA must either allege direct evidence of discriminatory animus or follow the burden-shifting framework of *McDonnell Douglas Corp. v. Green*.[10]  "If believed, direct evidence proves the existence of a fact in issue without inference or presumption, such as an employer's facially discriminatory policy or an oral or written statement showing a discriminatory motive."[11]

If plaintiffs do not allege direct evidence, they must follow the *McDonnell Douglas* framework's three steps.  First, the plaintiff must establish a prima facie case of discrimination.[12]

---

[7] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[8] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[9] Plaintiff labels her hostile work environment claims as "harrassment" [sic] claims.  Based on a review of the relevant caselaw, it appears the Tenth Circuit does not distinguish between a harassment claim and a hostile work environment claim.  *See, e.g.*, *Houck v. City of Prairie Vill.*, 166 F.3d 1221 (table), 1998 WL 792154, at *2 (10th Cir. 1998) ("Plaintiff presents her Title VII harassment claim by alleging a hostile work environment."); *King v. IC Grp., Inc.*, 701 F. Supp. 3d 1186, 1228 (D. Utah 2023) (utilizing elements of an ADA hostile work environment claim for an "an ADA harassment claim" (further citation omitted)).

[10] 411 U.S. 792 (1973); *see also Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1215, 1224 (10th Cir. 2022) (applying *McDonnell Douglas* framework to Title VII discrimination and retaliation claims); *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1192, 1209 (10th Cir. 2018) (applying *McDonnell Douglas* framework to ADA discrimination and retaliation claims).

[11] *Herrmann v. Salt Lake City Corp.*, 21 F.4th 666, 678 (10th Cir. 2021) (cleaned up).

[12] *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

"Only after the plaintiff clears this initial hurdle does the burden shift to the employer to prove a 'legitimate, non-discriminatory reason for the adverse employment action.'"[13] Finally, should the employer carry its burden, the plaintiff must point to alleged facts showing "that the stated nondiscriminatory reason is merely a pretext."[14]

### 1.    *Title VII discrimination*

Pursuant to 28 U.S.C. § 1981, Plaintiff first asserts that Defendant violated 42 U.S.C. § 2000e et. seq.—more commonly known as Title VII.[15]  "Title VII makes it unlawful 'to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'"[16]

Here, neither party argues that Plaintiff has alleged direct evidence of discrimination. Therefore, Plaintiff must rely on the *McDonnell Douglas* burden-shifting framework.  To establish a prima facie case of racial discrimination, Plaintiff must show: "(1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class."[17]

---

[13] *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (quoting *Khalik*, 671 F.3d at 1192).

[14] *Singh v. Cordle*, 936 F.3d 1022, 1037 (10th Cir. 2019) (further quotations and citations omitted).

[15] *See Payan v. United Parcel Serv.*, 905 F.3d 1162, 1168 (10th Cir. 2018) ("In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII." (further citation and quotations omitted)).

[16] *Khalik*, 671 F.3d 1188, 1192 (10th Cir. 2012) (quoting 42 U.S.C. § 2000e–2(a)(1)).

[17] *Id.* at 1193 (further citation, quotations, and brackets omitted); *see also Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981) (plaintiff's burden establishing disparate treatment prima facie case is not onerous). The Court is aware that there is some discrepancy within the Tenth Circuit as to whether the "inference of discrimination" analysis falls under the prima facie case or the pretext prong of the McDonnell Douglas test.  *See Luke v. Hosp. Shared Servs., Inc.*, 513 F. App'x 763, 766 (10th Cir. 2013) ("Some of our cases treat circumstances suggestive of discrimination as an element of a prima facie case; other cases treat these circumstances as part of the subsequent inquiry into pretext."); *see also Plump v. Gov't Emps. Ins. Co.*, 2024 WL 2818144, at *4 (D. Kan. June 3, 2024), 2022 WL 2131117, at *9 (D. Kan. June 14, 2022) (using different elements under *McDonnell Douglas* test than *Khalik* and analyzing inference of discrimination in prima facie case).

Unfortunately, the parties fail to address any of the steps under *McDonnell Douglas*. Their briefs do not even mention *McDonnell Douglas* or its burden-shifting framework. Furthermore, Plaintiff fails to cite *a single case* or legal authority for the law governing any of her claims. Despite the parties' failure to address *McDonnell Douglas*, it is clear that Plaintiff fails to state a claim for racial discrimination.

Although the parties do not dispute the first three elements of her prima facie case, Plaintiff nevertheless fails to allege facts plausibly showing that others not in the protected class were treated more favorably than herself. She fails to provide any allegations about similarly situated employees except to say "[n]on-African American and non-disabled or perceived disabled employees were not similarly treated and are not so treated."

"A plaintiff's assertion that she is 'similarly situated' to other employees is just a legal conclusion—and a legal conclusion is never enough."[18]  "Rather, a plaintiff must allege 'some set of facts'—not just legal conclusions—'that taken together plausibly suggest differential treatment of similarly situated employees.'"[19]  "Pleadings that do not allow for at least a reasonable inference of the legally relevant facts are insufficient."[20]

Plaintiff's bare legal conclusion that non-African American employees were treated more favorably is entirely insufficient to satisfy the fourth element of the prima facie case for her Title VII discrimination claim. Therefore, the Court need not go beyond the first step of the *McDonnell Douglas* analysis. Defendant's Motion as to Plaintiff's Title VII discrimination claim is granted.

---

[18] *Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019) (further citation and quotations omitted).

[19] *Id.* (quoting *Hwang v. Kan. State Univ.*, 753 F.3d 1159, 1164 (10th Cir. 2014)).

[20] *Id.* (quoting *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013)).

## 2. *ADA discrimination*

The ADA prohibits covered entities from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.."[21]  In the absence of direct evidence, an ADA discrimination claims utilize the same *McDonnell Douglas* framework as a Title VII discrimination claim.[22]  To establish a prima facie case of disability discrimination under the ADA, a plaintiff must establish: "(1) that [s]he is disabled within the meaning of the ADA; (2) that [s]he is qualified for the job held or desired; and (3) that [s]he was discriminated against because of [her] disability."[23]

Here, Plaintiff's fails to allege a single fact tying any alleged discrimination to her bipolar disorder.  The only *fact* concerning her bipolar disorder is that Amador informed Defendant's staff of Plaintiff's mental disorder by June or July of 2022.  Beyond that, each allegation regarding her "disability or perceived disability" is a legal conclusion to which the Court pays no heed.  Without any factual allegations capable of plausibly supporting an ADA discrimination claim, the Court must grant Defendant's Motion as to Plaintiff's ADA discrimination claim.

## 3. *Title VII retaliation*

Like Plaintiff's Title VII discrimination claim, her Title VII retaliation claim must rely on either direct evidence or the *McDonnell Douglas* analysis.  Plaintiff, however, does not attempt to allege any direct evidence of retaliation.  Thus, the Court must address her claims under *McDonnell Douglas*.  To establish a prima facie case of Title VII retaliation, "an employee must establish (1)

---

[21] 42 U.S.C. § 12112(a).

[22] *Kilcrease v. Domenico Transportation Co.*, 828 F.3d 1214, 1220 (10th Cir. 2016).

[23] *Lincoln*, 900 F.3d at 1192 (further citation and quotations omitted).

he or she engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action."[24]

As noted above, neither party addresses their respective burdens under *McDonnell Douglas*. Instead, Defendant argues that Plaintiff fails to identity any protected activity that she might have engaged in and fails to establish any causal connection.

"By its terms, Title VII prohibits retaliation against an employee who has 'opposed any practice made an unlawful employment practice' by Title VII."[25] However, a plaintiff "need not establish that the conduct she opposed actually violated Title VII, only that she had both a subjective good faith and objectively reasonable belief that it did."[26] This is both a subjective and objective test.[27] The objective portion "necessitates looking beyond the substantive law."[28] Instead, the court must consider "what a reasonable employee would understand about the law and believe in the same or similar circumstances."[29]

The Tenth Circuit has made clear that informal complaints regarding perceived discrimination may constitute protected activity.[30] Here, Plaintiff relies on her formal and informal complaints to another supervisor and Associate Relations about the workplace rumors and Dunn's

---

[24] *Ford*, 45 F.4th at 1224 (further citation and quotations omitted).

[25] *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016) (quoting 42 U.S.C. § 2000e–3(a)).

[26] *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021).

[27] *Id.* at 1261 ("The 'reasonable belief' standard in this circuit and most others requires a plaintiff show both a subjective, good faith belief and an objectively reasonable belief that he or she opposed conduct unlawful under Title VII.").

[28] *Id.* at 1263.

[29] *Id.*; *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 66 (2006) (holding Title VII retaliation provision provides broader protection than its discrimination provision).

[30] *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1213 (10th Cir. 2008) (citing *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004).

behavior to show that she engaged in protected activity.  If Plaintiff's complaints concerned unlawful discrimination, then they would constitute protected activity under Title VII.

However, Plaintiff's Title VII retaliation claims fails because the complainant must have "a reasonable good-faith belief that the opposed behavior was discriminatory."[31]  Nothing in Plaintiff's Complaint plausibly establish that Plaintiff's belief that her complaints opposed discrimination was objectively reasonable.  The only workplace conduct of which Plaintiff complained was: (1) rumors at work regarding a domestic incident at Plaintiff's mother's house; (2) Dunn following her around work; (3) Dunn asking other nurses if Plaintiff was doing her job; and (4) Dunn falsely informing others that Plaintiff left a shift early and would not work with her.

Plaintiff fails to allege any facts showing that a reasonable person could believe the complained of conduct stemmed from a discriminatory animus against Plaintiff as an African American.  Dunn's actions and rumors regarding coworkers' domestic disputes are not the sort of "highly offensive behavior and statements" that typify a Title VII retaliation claim.[32]  Nor is there any hint of racial animus in Plaintiff's Complaint beyond her own conclusory allegations.[33]  The only reasonable inference from Plaintiff's factual allegations is that Dunn took Amador's side in a family conflict between Plaintiff and Amador.  As Plaintiff admits, her niece Amador is part African American.  Dunn's preference for Amador over Plaintiff cannot by itself show that her actions towards Plaintiff were racially motivated.

Plaintiff may have subjectively believed she was opposing discriminatory practices prohibited by Title VII.  But based on the facts as alleged in the Complaint, no reasonable

---

[31] *Pittman v. Am. Airlines, Inc.*, 692 F. App'x 549, 553 n.2 (10th Cir. 2017) (quoting *Hertz*, 370 F.3d at 1015).

[32] *See Reznik*, 18 F.4th at 1265.

[33] For this reason, the Court would also be justified in dismissing Plaintiff's Title VII retaliation claim under the third step of the *McDonnell Douglas* analysis.

employee in Plaintiff's position would have believed the same.  Therefore, Plaintiff fails to establish her prima facie case, and the Court dismisses her Title VII retaliation claim without prejudice.

####    4.    *ADA retaliation*

Like Title VII, the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."[34]  The prima facie case for a retaliation claim under the ADA has identical elements to its Title VII counterpart.[35]  Therefore, a plaintiff must allege facts establishing: "(1) she engaged in protected opposition to discrimination; (2) a reasonable person would have found her employer's subsequent action to be materially adverse; and (3) a causal connection exists between her protected activity and the employer's action."[36]

As previously stated, Plaintiff fails to allege a single fact connecting her coworkers' workplace conduct to her alleged disorder.  If Plaintiff cannot show that the actions she complained of were discriminatory, then she cannot show that she engaged in protected activity by complaining to a supervisor and Associate Relations.  Although bare legal conclusions cannot support a plausible claim under the ADA, Plaintiff offers nothing more.  Therefore, her ADA retaliation claim must be dismissed.

---

[34] 42 U.S.C. § 12203(a).

[35] *Compare Ford*, 45 F.4th at 1224 with *Lincoln*, 900 F.3d at 1209.

[36] *Semsroth v. City of Wichita*, 555 F.3d 1182, 1184 (10th Cir. 2009).

C.     **Hostile work environment claims**

Unlike Plaintiff's other claims, a hostile work environment claim does not utilize the *McDonnell Douglas* framework.[37]  Under Title VII, the plaintiff must satisfy two elements.  First, she must show that she was discriminated against because of her race.[38]  That is, the plaintiff must show she "was targeted for harassment because of her race or national origin."[39]  Second, she must show "that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment."[40]

Under the ADA, the elements of a hostile work environment claim are:

> (1) the plaintiff is a member of a protected group (i.e., he is "disabled" as defined by the ADA); (2) the plaintiff was subject to unwelcome harassment; (3) the harassment was based on the alleged disability; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment.[41]

Here, Plaintiff relies on Dunn's aforementioned actions as the basis for her hostile work environment claims.  At the risk of sounding like a broken record, the Court once again notes that no alleged facts indicate that Dunn discriminated against Plaintiff because of her race or disability.  As noted earlier, this third element is so fundamentally lacking from Plaintiff's Complaint that the Court need not perform any further analysis.  Therefore, the Court dismisses both of Plaintiff's hostile work environment claims under both Title VII and the ADA.

---

[37] *See Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012) (Title VII); *Callahan v. Commc'n Graphics, Inc.*, 657 F. App'x 739, 746–47 (10th Cir. 2016) (ADA).

[38] *Ford*, 45 F.4th. at 1227.

[39] *Hernandez*, 684 F.3d at 957 (further citation, quotations, and brackets omitted).

[40] *Ford*, 45 F.4th. at 1227 (further citation, quotations, and brackets omitted).

[41] *Callahan*, 657 F. App'x 739, 746–47 (10th Cir. 2016) (citing *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007)).

**D.      Plaintiff's request for amendment**

In the last sentence of her Response, Plaintiff asks "that the plaintiff be allowed an opportunity to file an Amended Complaint to correct any deficiencies."  The Tenth Circuit has stated on numerous occasions that a "bare request in response to a motion to dismiss that leave be given to amend the complaint is insufficient."[42]  It has soundly rejected granting leave to amend where a plaintiff "simply made perfunctory, conditional requests in his responses to the motions to dismiss that he be allowed to amend if the court found his allegations deficient."[43]  Moreover, under this Court's local rules, a party filing a motion to amend must:

(1) set forth a concise statement of the amendment or leave sought;
(2) attach the proposed pleading or other document;
(3) in the case of a proposed amended pleading, a non-pro se filer must also attach a redlined version of the proposed amendment that shows all proposed changes to the pleading; and
(4) comply with the other requirements of D. Kan. Rule 7.1.[44]

Plaintiff fails to comply with this Court's rules governing amendment of the pleadings.  She merely presents a perfunctory, conditional request, which is wholly insufficient under Tenth Circuit precedent.  She likewise fails to attach the proposed pleading, much less a redlined version showing the proposed changes.  Therefore, the Court denies Plaintiff's requested leave to amend.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 8) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Complaint and all claims therein are **DISMISSED** without prejudice.

---

[42] *Sullivan v. Univ. of Kan. Hosp. Auth.*, 844 F. App'x 43, 52 (10th Cir. 2021) (cleaned up) (further citations and quotations omitted).

[43] *Id.*

[44] D. Kan. R. 15.1(a).

**IT IS SO ORDERED.**

Dated this 30th day of August, 2024.

This case is closed.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE